UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARTHUR WIGFALL, JR.,

          Plaintiff,

13 CV 5694

COMPLAINT

    -against-

JURY TRIAL
DEMANDED

THE CITY OF NEW YORK and Unknown Police
Officers of the 32nd Precinct, in their individual
capacities and in their official capacities as employees
of the City of New York,

          Defendants.
------------------------------------------------------------------X

  Plaintiff, Arthur Wigfall, Jr., by his attorney, Kavin L. Edwards, Esq., alleges the following for this Complaint:

## NATURE OF THE ACTION

  1. This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, for deprivation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 11 and 12 of the New York State Constitution, and laws of the State of New York, against the City of New York, and Unknown New York City Police Officers of the 32nd Precinct, police officers of the City of New York, in their individual capacities and official capacities. Plaintiff seeks compensatory and punitive damages, affirmative and equitable relief, an award of attorney's fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiff also asserts jurisdiction over the City of New York under 28 U.S.C. § 1331 and § 1367.

## VENUE

3. Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York because the events forming the basis of plaintiffs' complaint occurred in that District.

## NOTICE OF CLAIM

4. On June 1, 2012, Plaintiff filed a Notice of Claim upon defendant City of New York, by delivering copies thereof to the person designated by law as a person to whom such claim may be served.

5. Plaintiff's Notice of Claim was in writing, individually sworn to by plaintiff, containing his name and address, and the name and address of his attorney.

6. The Notice of Claim set out the nature of the claims, the time when, the place where, and manner by which the claims arose, and the damages and injuries claimed to have been sustained by plaintiff.

7. The City of New York has failed to adjust the claims for plaintiff within the statutory time period.

8. This action is being commenced within one year and ninety days after the happening of the event upon which the claims are based.

## PARTIES

9. Arthur Wigfall, Jr. ("Plaintiff" or "Mr. Wigfall"), an African-American male, is a citizen of the United States and, at all times relevant to the claims arising herein, was a resident of the State of New York.

10. At all times relevant to this complaint, each unknown defendant Police Officer of the 32nd Precinct ("defendant Police Officers"), were duly appointed and acting police officers of the New York City Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Police Department.

11. Defendant City of New York is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York, pursuant to Section 431 of its Charter. The City of New York has established and maintains a Police Department as a constituent department or agency of defendant City of New York.

12. At all relevant times, the City of New York and its Police Department employed all of the individual defendants.

13. At all relevant times, all of the individual defendants were agents, servants, and employees of the City of New York acting within the scope of their employment by defendant City of New York and its Police Department.

## FACTS

14. On or about May 18, 2012, Mr. Wigfall and his girlfriend, Ms. Vicki Lee, traveled to New Jersey to spend some time with Mr. Wigfall's friend, Mr. Todd Humbler.

15. When Mr. Wigfall and Ms. Lee stopped at a gas station, close to Mr. Humbler's home in New Jersey, Ms. Lee's cellular phone rang and an unknown defendant Police Officer was on the other line.

16. Upon information and belief, the unknown defendant Police Officer on the phone informed Ms. Lee that he was outside of Mr. Wigfall's apartment door in Manhattan, New York, with Ms. Lee's brother, Mr. Anthony Lee.

17. Upon information and belief, the unknown defendant Police Officer informed Ms. Lee that her brother was claiming that she was inside of Mr. Wigfall's apartment hurt or dead.

18. Ms. Lee assured the defendant Police Officer that she was fine and informed the officer that her brother, Mr. Anthony Lee, has a drug problem and that he might be under the influence at the moment.

19. Upon information and belief, after the officer confirmed that Ms. Lee was alright he asked to speak with Mr. Wigfall and Ms. Lee passed her phone to Mr. Wigfall.

20. Mr. Wigfall spoke with the unknown defendant Police Officer, and informed the officer that he and Ms. Lee were in New Jersey and that she was fine. Upon information and belief, at the conclusion of the conversation the officer assured Mr. Wigfall that everything was alright.

21. Approximately two hours later, an unknown defendant Police Officer called Ms. Lee's cellular phone again and asked to speak with Mr. Wigfall.

22. Upon information and belief, the unknown defendant Police Officer informed Mr. Wigfall that he needed to come and secure his apartment door because the unknown defendant Police Officers had knocked down Mr. Wigfall's front door.

23. Mr. Wigfall explained to the officer that since arriving at his friend's home, he had consumed some alcoholic beverages and that there was no way that he could drive while under the influence of alcohol in order to get back to Manhattan at that time.

24. Several hours later that morning, once Mr. Wigfall was sober, he traveled back to his apartment to a horrific scene.

25. When Mr. Wigfall got to his apartment door he saw a diagram of his apartment posted outside his door.

26. Upon information and belief, the police after speaking to Ms. Lee and confirming that she was fine, and after talking with Mr. Wigfall and assuring him that everything was alright at his apartment, had destroyed Mr. Wigfall's door, entered and searched his home.

27. Upon information and belief, the police entered and ransacked Mr. Wigfall's home; and broke a number of irreplaceable vinyl musical recordings that Mr. Wigfall had collected over several decades.

28. Upon information and belief, the police cut the locks on Mr. Wigfall's front door; The police also cut an, approximately, eight inch by eight inch hole in Mr. Wigfall's front door so that they could look into his home from the hallway.

29. Upon information and belief, Mr. Wigfall was later told, that when the officers entered his home they did so in a swat team like manner with assault weapons in hand.

30. Upon information and belief, prior to entering and searching Mr. Wigfall's home the police were told by a neighbor that Mr. Wigfall was not home.

31. Upon information and belief, the building's superintendent and or security guard also told the police Mr. Wigfall was not home.

32. Upon information and belief, Mr. Wigfall's building's superintendent, Pablo (last name unknown), was with the police during the entire time they were in Mr. Wigfall's building.

33. Upon information and belief, Pablo was present when the police first called Ms. Lee and her brother, Mr. Anthony Lee, was making a bunch of outrageous allegations.

34. Upon information and belief, Pablo heard the police talking about how spaced out Mr. Anthony Lee looked when Ms. Lee informed the police that her brother has a drug problem.

35. After assuring Mr. Wigfall and Ms. Lee that everything was fine, the defendant Police Officers, nevertheless, broke into Mr. Wigfall's home and illegally searched his home.

36. After the defendant Police Officers broke into Mr. Wigfall's home and illegally searched his residence, they told him that he needed to get back to his apartment and secure it.

37. Upon information and belief, when Mr. Wigfall went to the 32nd Precinct a few days later, to complain about the defendant Police Officers breaking his front door down and searching his home, the police officer took his identification and searched to see if he had any warrants.

38. Mr. Wigfall has grown increasingly fearful of officers from the New York City Police Department because of their pattern of violation or disregarding his and other

African-American males' rights under the United States Constitution, the New York State Constitution, and laws of the State of New York.

39. In or around 2005, Mr. Wigfall was assaulted, battered and falsely arrested by officers of the New York Police Department and later settled that claim with the City of New York.

40. In or around 2007, Mr. Wigfall was assaulted and battered, falsely arrested and falsely imprisoned by officers of the New York Police Department.

41. As a result of the above mentioned 2007 incident, Mr. Wigfall was incarcerated for approximately one year on Rikers Island and at other facilities. Mr. Wigfall eventually settled the 2007 claim with the City of New York.

42. On or about October 18, 2011, Mr. Wigfall, while in the custody of officers from the 32nd Precinct was repeatedly denied medical care, despite requesting the same; Thereafter, upon information and belief, Mr. Wigfall was assaulted and battered by officers from the 32nd Precinct.

43. As a result of the October 2011 incident with officers from the 32nd Precinct, Mr. Wigfall had to be hospitalized for a number of days at Harlem Hospital.

44. A lawsuit has been initiated against the City of New York and certain police officers from the 32nd Precinct, in connection with the October 2011 incident and is currently pending in the Southern District of New York.

45. Mr. Wigfall is unaware whether the defendant Police Officers from the 32nd Precinct who illegally searched his home on May 19, 2012, are the same officers from the 32nd Precinct who assaulted and battered him during the October 2011 incident.

46. Mr. Wigfall is concerned that officers from the New York Police Department are becoming increasingly dangerous to him and that Mr. Wigfall is not even safe from the police in the privacy of his own home. Mr. Wigfall believes that had he been home on May 19, 2012, he could have been grievously or mortally injured by defendant Police Officers from the 32nd Precinct.

47. As a result of the defendants' actions, Mr. Wigfall is experiencing fear of New York City Police Officers.

48. As a result of the defendants' actions, Mr. Wigfall is experiencing fear, anxiety, and emotional distress that he is not safe, in his home, from officers of the New York Police Department illegally entering his home and harming him.

49. Mr. Wigfall does not believe that the defendant Police Officers would have searched his home without obtaining a warrant, in violation of his rights, if he were a white male.

50. Upon information and belief, the defendant Police Officers, in searching the home and property of Mr. Wigfall, acted in conformity with the New York City Police Department's practice, custom or policy of violating or disregarding the rights of African-American males in the City of New York.

51. As a direct and proximate result of the above said acts of the defendants, Plaintiff suffered the following injuries and damages:

    a) Violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 12 of the New York State Constitution, to be free from unreasonable searches of his home without warrant supported by probable cause;

b) Violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 11 of the New York State Constitution, to not suffer the deprivation of his property without due process of law, and to equal protection of the laws;

c) Damage to property;

d) Destruction of property; and

d) Emotional trauma, distress, and suffering.

52. The actions of the individual defendants violated the following clearly established and well-settled constitutional rights of Plaintiff:

a) Freedom from warrantless searches of his home, the right to be secure in his home, papers and effects from unreasonable searches and seizures, and right to equal protection of the laws.

## FIRST CAUSE OF ACTION

53. Paragraphs 1 through 52 of this complaint are incorporated herein by reference as though fully set forth herein.

54. By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

55. Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above, caused by the defendants' aforesaid violations of plaintiff's constitutional rights under color of law.

## SECOND CAUSE OF ACTION

56. Paragraphs 1 through 52 of this complaint are incorporated herein by reference as though fully set forth herein.

57. Defendants violated Plaintiff's right to be secure in his home, papers and effects from unreasonable searches and seizures, and right to equal protection of the laws, by way of defendants cutting a hole in Plaintiff's door; cutting the locks on Plaintiff's door; entering and searching Plaintiff's home and destroying Plaintiff's property.

58. Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of the above-described unreasonable, warrantless, search of Plaintiff's home.

## THIRD CAUSE OF ACTION

59. Paragraphs 1 through 52 of this complaint are incorporated herein by reference as though fully set forth herein.

60. Defendants intentionally inflicted emotional distress upon Plaintiff by way of defendants' above-described actions.

61. Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by plaintiff as a result of the defendants intentional infliction of emotional distress upon plaintiff.

## FOURTH CAUSE OF ACTION

62. Paragraphs 1 through 52 of this complaint are incorporated herein by reference as though fully set forth herein.